## LOUISIANA RY. & NAV. CO. OF TEXAS v. BREWER.  (No. 3102.)

(Court of Civil Appeals of Texas. Texarkana. June 25, 1925.)

**1. Railroads ⬦350(1)—Whether train operatives of railroad were negligent in crossing accident held for jury.**

In action for death, when plaintiff's decedent was struck by defendant's train on highway crossing, whether train operatives or railroad was negligent *held* for jury.

**2. Railroads ⬦348(1, 4)—Findings that railroad crossing was in bad condition and bell was not rung warranted.**

In action for death of plaintiff's decedent, when struck by defendant's train on highway crossing, evidence *held* to sustain findings that crossing was in bad condition and bell was not rung as required by statute.

**3. Appeal and error ⬦1064(1)—Railroads ⬦351(22)—Charge on discovered peril held erroneous, as failing to tell jury that discovery of peril must have been in time to enable train operatives to avoid collision.**

In action for death of plaintiff's decedent, when struck by defendant's train on highway crossing, charge on issue of discovered peril *held* erroneous and harmful, in failing to tell jury that discovery of peril must have been in time to enable train operatives, by use of means at their command, to avoid collision.

**4. Trial ⬦228(4)—Juries should not be required to indulge in a process of legal reasoning.**

Instructions should not require juries to indulge in a process of legal reasoning.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Action by W. E. Brewer against the Louisiana Railway & Navigation Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

McMahan & Dohoney, of Greenville, for appellant.

Clark & Clark, of Greenville, and C. A. Sweeton, of Houston, for appellee.

───────────────────────────────

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HODGES, J. On May 4, 1922, Mrs. Maud Brewer, the wife of the appellee, was killed in a collision at a crossing by one of the appellant's trains. This appeal is from a judgment in appellee's favor for damages resulting from the death of his wife. He charged negligence on the part of the appellant (1) in failure to maintain the crossing in proper condition for use by the traveling public; (2) failure of the appellant's employees in charge of the train to keep a lookout for persons about to use the crossing; (3) failure to ring the bell, as required by statute, in approaching the crossing; (4) discovered peril. The court submitted those issues in a general charge, and the jury returned a verdict against the appellant for the sum of $15,000.

The facts about which there is no apparent dispute show that on the date above mentioned Mrs. Brewer was riding in a Ford sedan driven by her daughter, Mrs. Whitten. They were going from Cumby to Greenville, in Hunt county. Mrs. Brewer was merely accompanying her daughter, who was expecting to meet her husband at Greenville. For some distance after leaving home they traveled what is called the Old Colony road, a public highway that runs parallel with and south of the appellant's line of railroad. When a few miles from Cumby they turned north on a road that crossed the appellant's track at right angles and connected with another highway that led on west to Greenville. As they were crossing the railroad the auto was struck by a west-bound passenger train. Mrs. Brewer was killed, and Mrs. Whitten was seriously injured. From the point where they left the Old Colony road to the crossing is about a quarter of a mile. The photographs introduced in evidence, and the testimony of witnesses, show that the country intervening between this crossroad and the railway track is open, with but few obstructions to prevent a traveler upon that road from seeing a train approaching from the east, at least 600 feet before it reached the crossing.

Mrs. Whitten testified, in substance, that she was going to Greenville to meet her husband. Her mother went along for company. She was driving, and a cousin was sitting on her right; Mrs. Brewer was occupying the rear seat. All the windows of the car were closed except the one on Mrs. Whitten's left. The condition of the road from where they left the Old Colony road was very rough and had deep ruts in it. She did not think she was driving over 5 miles an hour through that lane. There was a low place in the road about 300 or 400 feet south of the railroad crossing, also a deep ditch on the side of the road, and she had to go in low gear to pass it. The road from there to the crossing was rough, and just a little way before she got to the crossing there was a sharp incline going up, and she had to go in low gear to get up that incline. After going up the incline she discovered that the south rail of the track was exposed. She crossed the first rail of the track, and when the front wheels dropped over the car stopped and she never did get any further. When the wheels of the car dropped over the first rail the engine was killed, and she was never able to start the car again. It was just a matter of a few seconds. The train was coming on them. She did not hear any signals given by the train, did not hear any whistle, did not hear the bell ringing. "It did not ring," she said. As she approached the crossing she looked and listened for the train—always did that— and she did not see or hear any train approaching. After the collision she became unconscious and did not know what happened. She had frequently traveled that road, and was familiar with the crossing.

Appellant's fireman testified that as they approached the crossing he was looking ahead and discovered the automobile on the road south of the track. When the train turned the curve a quarter of a mile east of the crossing, according to his best judgment, the car was about 150 yards from the railroad. It was not then traveling very fast— probably 10 miles an hour. He noticed the car again when the train was about 200 or 300 feet east of the water tank (the latter was 407 feet east of the crossing). The car was then nearer the track, and going at a very low rate of speed. After he passed the tank he noticed the car still coming, and as it got to the edge of the right of way, not more than 50 feet, it seemed to him that the car was speeded up, and he then called to the engineer to stop, and the latter applied the brakes immediately. The pilot beam hit the front door of the car and shattered it. The car was moving when struck. He did not signal the engineer to stop sooner because that was an everyday occurrence. They were going along slowly, and he supposed they would stop for the train. There was nothing to keep the occupants of the car from seeing the train. When they passed the tank it looked like they stepped on the gas and speeded the car up and were going to try to beat the train across the track. He further testified that a train of that size and under similar conditions could be stopped within a distance of 300 feet. The regular signals were given for the crossing. The bell rang automatically, and was ringing after the train stopped. At the time he saw the automobile the train was running about 40 miles an hour and going down grade.

Appellant's engineer testified, in substance, that he did not see the automobile approaching the track because he was seated at the throttle on the right-hand side of the cab He was looking ahead, but the boiler prevented him from seeing objects to the left. The first intimation he had that there was any

danger was when the fireman called to him to stop. He was then about 150 feet from the crossing, about half way between the water tank and the crossing. He applied the air and emergency and opened the sand line. The train was running between 35 and 40 miles an hour; that was the usual speed of the train. It was not possible for him to stop the train sooner than he did. He whistled for the crossing in the usual manner.

There were several eyewitnesses to the collision. Some of them testified that they did not hear the bell ring, while others stated that they did hear the bell ring. None of them corroborated Mrs. Whitten in her statement that at the time the collision occurred the car had stopped on the track.

[1] Appellant requested a peremptory charge, upon the ground that the evidence failed to show any negligence on the part of the train operatives or the railroad company in any of the respects charged. The requested instruction was, we think, properly refused.

[2] Appellant also objected to each paragraph of the court's charge submitting in detail the respective grounds of liability, for the reason that the evidence was not sufficient. The evidence was sufficient to justify a finding that the crossing was in bad condition and that the bell did not ring on that occasion as required by statute. We may also concede that the evidence was sufficient to sustain a finding of discovered peril, but a majority of the court doubt the sufficiency of the evidence to sustain a finding that the trainmen failed to keep a lookout to discover persons about to use the crossing. The fireman testified that he saw the car in which the deceased was riding some distance before it reached the crossing, and also noticed it at other points before it reached the track. It would be unreasonable for the jury, in the absence of any contradiction whatever, to discredit that testimony of the fireman and find that no lookout was kept. If the evidence is strong enough to sustain a finding that the car was actually discovered in time to avoid the accident, it cannot be said that the evidence was also sufficient to sustain a finding that the employees did not discover the car in time to avoid the accident. It would not be a case of finding one or the other of two different facts, but a case in which it is claimed that the evidence proves two conflicting facts. If one is true, the other cannot be true. It was a general charge and a general verdict, and we are unable, in the present state of the record, to tell which of these issues the jury determined in favor of the plaintiff, or whether or not the jury based its verdict upon some other fact.

Upon the issue of discovered peril, the court gave the following charge:

"You are instructed that, if the agents and servants of the defendant operating the engine pulling the train in question saw the automobile on or approaching the railway crossing, and saw and knew that the occupants of the car were in a perilous position and in imminent danger of being struck by the train, then in that event it was the duty of said persons operating said engine to use ordinary care to avail themselves of all the means and appliances at their command consistent with the safety of the train and persons riding upon the train to avoid striking the automobile, and a failure under such circumstances to use such care would be negligence. If you believe from the evidence that, as the train in question approached the crossing referred to in this charge, the defendant's agent in charge of the operation of the engine pulling said train saw the automobile in which plaintiff's wife was riding on or approaching the railway crossing, and saw and knew that the occupants of the car were in a perilous position and in imminent danger of being struck by the train, and if you further believe that, with such knowledge, if any, the employees in charge of the engine pulling the train failed to use ordinary care to use all the means or appliances at their command consistent with the safety of the train and the people riding thereon to avoid striking the car; and if you further believe that such failure, if any, was negligence, and that such negligence, if any, was the proximate cause of the striking of the car and the consequent death of the plaintiff's wife, then in that event you will find for plaintiff, even though you may have found that Mrs. Marguerite Whitten, the driver of the car, or the plaintiff's wife, or both of them, were guilty of negligence in driving upon the crossing at the time and in the manner in which they did, as referred to in paragraph 13 of this charge."

[3, 4] The objection to that charge is that it failed to tell the jury that the discovery of the peril must have been in time to enable the train operatives, by the use of means at their command, to avoid the collision. We think the charge is subject to the criticism. Under the facts of this case the failure to make that qualification cannot be regarded as harmless error. It is true the failure to sooner make an effort to stop the train could not have been the proximate cause of the injury unless the discovery of the peril had been made in time to enable the trainmen to avoid the collision. But the defendant had a right to have that fact presented in a plainer and more direct manner. Juries are not expected to indulge in a process of legal reasoning such as would be here required to find the qualification which the court had omitted.

In view of another trial, we think the court might appropriately submit the issue as to whether or not the road was a public county road over which the statute requires railway companies to maintain crossings.

The remaining assignments of error are overruled without discussion, but, for the reasons stated, the judgment will be reversed, and the cause remanded.